IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

MARCEL WISZNIA and WALTER WISZNIA,
d/b/a WISZNIA ASSOCIATES,

       Plaintiffs,

v.                                      No. Civ. 00-1184 LH/LAM

CITY OF ALBUQUERQUE,
a municipal corporation,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's "Motion for Summary Judgment on Plaintiffs' Claims for Deprivation of their Due Process, and Equal Protection Rights, and Takings of their Property," filed March 7, 2002 (Doc. No. 90) (hereinafter "Motion for Summary Judgment"). In reviewing the parties' briefs on their merits, the Court found reason to question its subject matter jurisdiction over Plaintiffs' claims, specifically whether Plaintiffs' federal constitutional claims were ripe and whether Plaintiffs were required to adjudicate their inverse condemnation claims in state court prior to bringing their federal constitutional claims. Based on this Court's extensive review of the law on this jurisdictional issue, the Court concludes that jurisdiction is lacking over Plaintiffs' federal constitutional claims. Consequently, this Court remands Plaintiffs' suit to state court.

I.    **Background**[1]

Plaintiffs Marcel Wisznia and Walter Wisznia were conducting business as Wisznia Associates (collectively, "Plaintiffs"). Plaintiffs were awarded a contract from the State of New

---

[1]The following facts are taken from Plaintiffs' complaint.

Mexico Department of Corrections ("DOC") for the lease of a probation and parole office in

Albuquerque, New Mexico.  The DOC approved Plaintiffs' plan to construct a 23,300 square-

foot building located in the Yale Business Park.  On May 18, 1999, Plaintiffs entered into a

written lease agreement with the DOC that required, in pertinent part, the building to be ready for

occupancy by April 1, 2000.

      The proposed building location at the Yale Business Park was zoned SU-1 for uses within

the O-1 (Office and Institution), C-2 (Community Commercial), and I-P (Industrial Park) zones.

The City had allowed other existing probation and parole offices to be located in O-1 and C-2

zones.  The City had never taken any action to indicate that those existing probation and parole

offices were not in compliance with existing City zoning ordinances.  Moreover, the City's

Development Process Manual specifically recognized that a halfway house was allowed as a

permissive use in an O-1 zone.

      On May 28, 1999, Plaintiffs submitted a site plan to the City of Albuquerque ("City").

The City Planning Department prepared a Staff Report that recommended approval of the site

plan subject to certain design changes, which were acceptable to Plaintiffs.  The Staff Report

noted that the building would provide a location for probation officers to meet parolees but that

there were no detention facilities in the building.  The City Planning Department, which reviewed

the site plan for zoning concerns, had "no comment."  In light of the recommendation in the Staff

Report, Plaintiffs proceeded to purchase, for approximately $375,000.00, the site intended for the

proposed building.  Plaintiffs also expended substantial amounts of money in planning and

architectural fees.

      On July 15, 1999, Plaintiffs' building permit request came before the City's Environmental

Planning Commission ("EPC").  During the hearing, none of the EPC members questioned the propriety of the zoning for the building, and one commissioner even acknowledged that the site was zoned for the proposed use.  The EPC, however, recommended a 30-day deferral to allow time for the Plaintiffs to revise their application to better comply with the Yale Business Park Design Guidelines.  Compl., Ex. B at 7.  On August 12, 1999, Plaintiffs submitted a request to amend the Yale Business Park master plan in order to facilitate the changes recommended by the City.  On August 26, 1999, the EPC again voted to defer Plaintiffs' request until September 9, 1999.  *Id.*, Ex. B at 8.

Before the September 9, 1999 EPC hearing, Plaintiffs revised their site plan to meet the City's parking requirements, including the relocation of the building on the site, the acquisition of an additional seven-foot strip of land, and a boundary change.  The City staff recommended approval of the site plan and the request for a master plan amendment.  However, members of the Victory Hills Neighborhood Association, which represented the neighborhood nearest to the site, solicited and caused political pressure to be brought ex parte on EPC members and on the City Zoning Enforcement Manager ("ZEM") to deny Plaintiffs' application.  On September 9, 1999, the EPC hearing concluded without any action taken, and the hearing on Plaintiffs' application was again deferred until October 21, 1999.

On October 1, 1999, Plaintiffs' counsel inquired by letter to the City whether zoning was going to be an issue at the October 21, 1999 hearing.  On October 6, 1999, the City ZEM, Robert Romero, sent Plaintiffs a letter advising them that his office determined that the proposed building constituted a correctional or disciplinary institution such that the proposed building could only be built on a site zoned SU-1 for specific use as a "correctional or disciplinary institution."  Compl.,

Ex. D.  Mr. Romero advised Plaintiffs that their current proposal required a zone change for the

site to allow the construction of the proposed building.  *Id.*

At the October 21, 1999 hearing, a representative of the ZEM stated that the October 6,

1999 letter was not a formal zoning opinion or declaratory ruling and that the City zoning officials

lacked sufficient information to provide a formal zoning opinion or declaratory ruling.

Nevertheless, the EPC, relying on Mr. Romero's October 6, 1999 letter, denied Plaintiffs'

building permit application.  Plaintiffs appealed the EPC decision to the City Council's Land Use,

Planning and Zoning Committee ("LUPZC").  Members of the Victory Hills Neighborhood

Association again brought political pressure on LUPZC members in order to persuade them to

deny Plaintiffs' building application.  On December 8, 1999, the LUPZC held a public hearing on

the issue.  The LUPZC upheld the EPC's decision and voted that the appeal should not be heard

by the full City Council.  Members of the Victory Hills Neighborhood Association once again

brought political pressure on members of the City Council.  On December 17, 1999, the City

Council adopted the recommendation of the LUPZC and affirmed the denial of Plaintiffs' building

permit.

Plaintiffs did not attempt to obtain a zone change for their proposed probation and parole

office.  Instead, on January 18, 2000, Plaintiffs filed their administrative appeal from the City

Council's decision in state district court, CIV No. 2000-00447.  As a result of the denial of

Plaintiffs' building permit, however, Plaintiffs were forced to breach their lease agreement with

the DOC, and thus, the DOC terminated the lease agreement, effective February 21, 2000.

Plaintiffs later sold the proposed site at a loss in order to mitigate their damages.

On July 7, 2000, Plaintiffs filed a second lawsuit in state court, CIV No. 2000-06882,

alleging 42 U.S.C. § 1983 claims for procedural and substantive due process, equal protection, and an unconstitutional taking as well as state law claims for inverse condemnation/temporary taking and inverse condemnation/total taking.  On June 2, 2000, Plaintiffs sold the property at the Yale Business Park.  On August 16, 2000, Defendant removed the second state lawsuit, CIV No. 2000-06882, to this Court.  On March 14, 2001, the state court dismissed Plaintiffs' administrative appeal in case CIV No. 2000-00447, after Plaintiffs voluntarily moved to dismiss the case based on the fact that the administrative appeal was moot because Plaintiffs sold the property.  (*See* Doc. No. 36, Ex. G).[2]

On March 7, 2002, the parties filed a motion packet consisting of Defendant's Motion for Summary Judgment on Plaintiffs' Claims for Deprivation of their Due Process, and Equal Protection Rights, and Takings of their Property (Doc. No. 90), Defendant's memorandum in support of its motion for summary judgment (Doc. No. 92), Plaintiffs' response (Doc. No. 93), Plaintiffs' memorandum in support of its response (Doc. No. 94), and Defendant's reply (Doc. No. 95).

In reviewing the parties' briefs on their merits, the Court found reason to question its subject matter jurisdiction over Plaintiffs' claims, specifically whether Plaintiffs' federal claims

_____

[2]On June 1, 2001, the City filed a Motion for Summary Judgment based on Res Judicata. (Doc. No. 34).  The City argued that Plaintiffs' claims in the second suit should have been brought in the original state court case, CIV No. 2000-00447, and that the judgment of dismissal in that case precluded Plaintiffs' second suit.  Def.'s Mem. in Supp. of Mot. for Summ. J. based on Res Judicata (Doc. No. 35).  On April 18, 2002, this Court entered a Memorandum Opinion and Order granting Defendant's Motion for Summary Judgment based on Res Judicata and dismissing Plaintiffs' case.  (Doc. No. 100).  On May 14, 2002, Plaintiffs filed a notice of appeal of the Court's ruling.  (Doc. No. 103).  On June 15, 2005, the Tenth Circuit reversed this Court's decision and remanded the case for further proceedings.  *Wisznia v. City of Albuquerque*, 2005 WL 1400385 (10th Cir.) (unpublished decision).

were ripe and whether Plaintiffs were required to adjudicate their just compensation claims

utilizing state procedures prior to bringing their federal constitutional claims.  The Court also

examined Plaintiffs' complaint which raised the ripeness issue and alleged that their claim "is ripe"

because "[c]ompensation is not available to the Plaintiffs pursuant to inverse condemnation under

New Mexico law because all or substantially all of the beneficial use of the property was not taken

and, therefore, there is no adequate state remedy."  Compl. at 14-15.  Defendant, in its answer,

asserted as an affirmative defense that "Plaintiffs' constitutional claims are barred by the doctrine

of ripeness."  Am. Answer (Doc. No. 99) at 9.  This Court must determine whether it has subject

matter jurisdiction over the federal constitutional claims prior to determining the merits of the

claims.

II.     **Discussion**

Federal Rule of Civil Procedure 12(h)(3) confers a duty upon the court to determine

matters of subject matter jurisdiction *sua sponte*.  *Tuck v. United Servs. Auto Ass'n*, 859 F.2d

842, 844 (10th Cir. 1988).  "Whenever it appears that subject matter jurisdiction is lacking, the

court is duty bound to dismiss the action."  *Anderson v. Alpine City*, 804 F.Supp. 269, 272 (D.

Utah 1992).  If a court determines that a plaintiff's claim is unripe, the court must dismiss the

claim for lack of subject matter jurisdiction.  *See Bateman v. City of West Bountiful*, 89 F.3d 704,

706 (10th Cir. 1996); *J.B. Ranch, Inc. v. Grand County*, 958 F.2d 306, 307-08 (10th Cir. 1992).

A.      **Ripeness of federal constitutional takings claim**

The Fifth Amendment provides that private property shall not "be taken for public use,

without just compensation."  U.S. Const., amend. V.  The Takings Clause of the Fifth

Amendment applies to the states through the Fourteenth Amendment due process clause.

*Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 175 n.1 (1985).  An aggrieved property owner must show more than the taking of his property; the owner must also show that the government refused just compensation for his loss.  *J.B. Ranch*, 958 F.2d at 308.  Stemming from this latter requirement, the Takings Clause is not violated until the State fails to provide adequate compensation for the taking.  *Williamson County*, 473 U.S. at 195. Accordingly, a § 1983 takings claim is not ripe unless the plaintiff (1) obtains a final decision from the government regarding the application of the regulation to the property at issue and (2) seeks compensation for the loss through the procedures the State has provided for doing so.  *Id.* at 186, 194.  Therefore, Plaintiffs must demonstrate that they have satisfied these two requirements before this Court can consider the merits of their § 1983 takings claim.

The Court will proceed directly to the second *Williamson County* prong as that prong is dispositive as to whether this Court has jurisdiction.  According to the second prong, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure *and* been denied just compensation."  *Id.* at 195 (emphasis added).  Under New Mexico law, "[p]rivate property shall not be taken or damaged for public use without just compensation."  N.M. Const. art. II, § 20.  A property owner may bring an inverse condemnation action to obtain just compensation through a suit in state court.  NMSA § 42A-1-29.  Section 42A-1-29 provides:  "A person authorized to exercise the right of eminent domain who has taken or damaged . . . any property for public use without making just compensation . . . is liable to the condemnee . . . in an action to be brought under and governed by the Rules of Civil Procedure for the District Courts of this state."  *Id.*

In this case, Plaintiffs did file an inverse condemnation action in state court.  On July 7,

2000, Plaintiffs filed their second lawsuit in state court, CIV No. 2000-06882, alleging four

counts.  Count 1 alleged claims for procedural and substantive due process and equal protection

under 42 U.S.C. § 1983.  Count 2 pled a claim for inverse condemnation/temporary taking

"[p]ursuant to New Mexico statutory and constitutional law."  Compl. at 13.  Count 3 alleged a

cause of action for inverse condemnation/total taking.  Finally, Count 4 alleged a claim for

unconstitutional taking under 42 U.S.C. § 1983.  On August 16, 2000, Defendant removed this

second state lawsuit, CIV No. 2000-06882, to this Court.  This is the suit currently before the

Court.

Although Plaintiffs filed their inverse condemnation lawsuit in state court, the state court

has not yet denied Plaintiffs compensation for their claims.  Simply using the available state

procedures is not enough.  A plaintiff must also have been denied just compensation. *See*

*Williamson County*, 473 U.S. at 195.  Until the state court considers Plaintiffs' inverse

condemnation claims and denies them relief, this Court does not have jurisdiction to consider

Plaintiffs' federal constitutional takings claim.  *See Miller v. Campbell County*, 945 F.2d 348, 352

(10th Cir. 1991).

It is true that the state court did not rule on Plaintiffs' inverse condemnation action

because Defendant removed the entire suit to this Court before the state court could rule on the

inverse condemnation issue.  In Plaintiffs' bringing federal claims together with state claims,

Defendant was able to remove the entire suit based on federal question jurisdiction.[3]  It could thus

---

[3]It is not entirely clear based on Defendant's Petition for Removal on what jurisdictional
foundation Defendant bases its petition, as Defendant does not expressly state whether removal is
based on federal question jurisdiction, federal diversity jurisdiction, or both.  *See* Petition for
Removal (Doc. No. 1).  In its Petition, Defendant cites to the general removal statute, 28 U.S.C.
§ 1441, and states that "Plaintiffs allege that the City of Albuquerque violated his rights of due

be argued that this Court's supplemental jurisdiction enables it to consider the merits of Plaintiffs'

state inverse condemnation claims in the first instance, and that a decision denying relief would

then ripen Plaintiffs' federal takings claim such that this Court could then consider the

constitutional claim.  The courts that have considered this argument, however, have rejected it.

*See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 386 (5th Cir. 2001) (noting that a

plaintiff cannot ripen a federal takings claim by simultaneously bringing a state takings claim);

*John Corp. v. City of Houston*, 214 F.3d 573, 581 n.15 (5th Cir. 2000) (citing *Samaad v. City of*

*Dallas*, 940 F.2d 925, 934 (5th Cir. 1991)) (noting that pendent state inverse condemnation claim

cannot render federal takings claim ripe); *GBT Partnership v. City of Fargo*, 2001 WL 1820144,

---

process."  *Id.*  Based on this statement and on the Court's analysis of the complaint, which alleges
federal causes of action under 42 U.S.C. § 1983, this Court determines that the Petition for
Removal with its attached complaint sufficiently alleges federal question jurisdiction.

      Nevertheless, the Court concludes that Defendant's Petition for Removal does not even
allege, let alone support, federal jurisdiction based on diversity.  This Court reviewed the
allegations in Plaintiffs' state court complaint and found that the complaint likewise does not
establish all the necessary elements for diversity jurisdiction.  Diversity jurisdiction requires
diversity of *citizenship*.  28 U.S.C. § 1332(a).  The complaint merely alleges that the plaintiffs are
"residents" of the states of Louisiana and Texas.  "[A]llegations of mere 'residence' may not be
equated with 'citizenship' for the purposes of establishing diversity."  *Whitelock v. Leatherman*,
460 F.2d 507, 514 (10th Cir. 1972).  Domicile, the equivalent of state citizenship, requires more
than mere residence; domicile exists only when such residence is coupled with an intention to
remain in the state indefinitely.  *Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983).  As the
petition fails to allege diversity jurisdiction and to make the requisite citizenship allegation, this
Court determines that Defendant has not met its burden of establishing diversity jurisdiction in this
case.  *See Laughlin v. KMart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) (stating that burden is on
party requesting removal to set forth underlying facts supporting assertion that amount in
controversy exceeds jurisdictional amount and noting that there is a presumption against
removal).  This Court is aware that the Tenth Circuit opinion in *Wisznia* made a passing reference
referring to this case as a "diversity action."  2005 WL 1400385 at *4.  Nevertheless, after
reviewing the opinion, this Court cannot conclude that the Tenth Circuit actually analyzed and
made a ruling that there is diversity jurisdiction.  This Court must thus conduct its own analysis of
its basis for federal jurisdiction, and as just discussed, this Court has concluded that Defendant has
not met its burden of establishing diversity jurisdiction in this case.

*2 (D. N.D. Nov. 27, 2001) (unpublished decision) (holding that *Williamson County* state compensation prong may not be satisfied by simultaneously bringing federal and state takings claims).

Moreover, the Tenth Circuit appears to follow this same course.  In *SK Finance SA v. La Plata County*, the plaintiff filed suit in federal court alleging, among other things, a Fifth Amendment takings claim and an inverse condemnation claim under the Colorado Constitution. 126 F.3d 1272, 1275 (10th Cir. 1997).  The *SK Finance* court determined that it could consider the plaintiff's state inverse condemnation claim based on federal diversity jurisdiction, but nonetheless concluded that the state law claim was not ripe because a final decision had not been rendered by the defendant as to the permissibility of the plaintiff's proposed sewer system.  *Id.* at 1276-77.  Although the court did not ultimately rule on the merits of the plaintiff's state inverse condemnation claim, what is notable about the opinion is that the Tenth Circuit determined that the plaintiff's federal takings claim was not ripe *prior to* considering the plaintiff's state law inverse condemnation claim.  *See id.* at 1276.  The Tenth Circuit has apparently concluded that a plaintiff may not use a state law takings claim to ripen a federal takings claim brought in the same suit.  *See id.  See also Vulcan Materials*, 238 F.3d at 386 (construing *SK Finance* as holding that "a plaintiff may bring a state law takings claim in diversity, though apparently may not use that claim to ripen a federal takings claim brought in the same proceeding").  If the Tenth Circuit had thought otherwise, it would have had to consider the state inverse condemnation claim first before deciding whether the plaintiff's federal constitutional takings claim was ripe.

This does not, however, end the inquiry, as the procedure provided by the State must be "an adequate procedure for seeking just compensation."  *Williamson County*, 473 U.S. at 195.

10

Plaintiffs allege in their complaint that the state law remedies are inadequate because they "fail to allow recovery for the damages suffered by Plaintiffs as a result of the interim, or temporary, deprivation of their property rights prior to the commencement of this action."  Compl. at 11-12. Plaintiffs also claim the state law remedies are inadequate because they "only allow Plaintiffs to recover damages if they can prove that they have been deprived of all beneficial use of their property, not simply those beneficial uses that are consistent with the land's highest and best use." *Id.* at 12.  Finally, Plaintiffs allege that the "State law remedies are inadequate because those remedies fail to allow Plaintiffs to recover damages for the willful and malicious character of the City's attempts to deprive Plaintiffs of their property rights without just compensation."  *Id.*

"[A] federal takings claim is not ripe until it is apparent that the state does not intend to pay compensation."  *Estate of Himelstein v. City of Fort Wayne*, 898 F.2d 573, 576 (7th Cir. 1990).  Until the state court establishes that the owner may not obtain just compensation through an inverse condemnation suit under any circumstances, the state procedures are adequate. *Bateson v. Giesse*, 857 F.2d 1300, 1306 (9th Cir. 1988).  The unsettled status of state law does not render the available procedures "inadequate."  *See Samaad*, 940 F.2d at 934, and cases cited therein.  "This inquiry is only a facial examination of the procedures established by the state and how they are generally applied.  It is without regard to how they are applied in a particular case." *Stockler v. City of Detroit*, 936 F.2d 573, *5 (6th Cir. 1991) (unpublished decision).  The Supreme Court itself described the inquiry into *Williamson County*'s second prong as a determination of whether the plaintiff "avail[ed] itself of an available and *facially adequate state procedure* by which it might obtain 'just compensation.'"  *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351 (1986) (emphasis added).  Thus, this Court must look to whether state

11

law provides a recognizable cause of action to compensate for a taking, not whether these particular Plaintiffs can prevail on their particular facts.  *Cf. Estate of Himelstein*, 898 F.2d at 576-77 (analyzing whether Indiana law recognizes temporary, regulatory actions without regard to application of such a cause of action to facts of plaintiffs' particular case); *Hoehne v. County of San Benito*, 870 F.2d 529, 533-34 (9th Cir. 1989) (takings claim ripe because at time plaintiff brought federal action California did not provide inverse condemnation remedy); *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514, 1517 (11th Cir. 1987) (takings claim ripe for review because Florida did not recognize inverse condemnation suits).  As the Seventh Circuit stated, "The right question . . . is whether the state courts are available to receive arguments and resolve disputes; that the federal plaintiff likely would lose on the merits is neither here nor there."  *SGB Financial Services, Inc. v. Consolidated City of Indianapolis-Marion County*, 235 F.3d 1036 (7th Cir. 2000) (upholding dismissal of plaintiff's federal takings claim for lack of ripeness because plaintiff failed to use available state court forum, even though plaintiff not likely to prevail on merits of state claim).  *See also Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1542 & n.13 (11th Cir. 1991) (holding that plaintiffs' federal takings claim was not ripe because plaintiffs did not pursue state reverse condemnation proceedings, despite plaintiffs' argument that their inverse compensation claim was not "viable").

In this case, New Mexico law permits a landowner to seek compensation for a regulatory taking through an inverse condemnation action.  *See Estate and Heirs of Sanchez v. County of Bernalillo*, 120 N.M. 395, 396-97, 902 P.2d 550, 551-52 (1995).  Furthermore, New Mexico courts may recognize, and certainly have not foreclosed, a temporary taking claim where a zoning ordinance is wrongfully applied.  *PDR Development Corp. v. City of Santa Fe*, 120 N.M. 224,

226, 900 P.2d 973, 976 (Ct. App. 1995). New Mexico thus provides a facially adequate state procedure for determining whether Plaintiffs should be compensated for the alleged taking of their property. That Plaintiffs may not ultimately be successful in obtaining compensation through their state claims is of no moment so long as the state court procedure is available and could provide adequate compensation. Moreover, Plaintiffs' own complaint suggests that they, too, hold out hope of recovery under state law, as Counts 2 and 3 of their complaint allege state law inverse condemnation causes of action.

In sum, Plaintiffs failed to file a separate state inverse condemnation cause of action in the available and adequate state forum prior to bringing their federal constitutional takings claim, as required by *Williamson County*. Accordingly, Plaintiffs' federal constitutional takings claim is not ripe, and this Court lacks subject matter jurisdiction over the claim.

      B.     **Ripeness of § 1983 Fourteenth Amendment due process and equal protection claims**

The Tenth Circuit has repeatedly held that due process and equal protection claims that "rest upon the same facts as a concomitant takings claim" must also meet the ripeness requirements of *Williamson County*. *Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996). The Tenth Circuit explained:

> Because the Just Compensation Clause of the Fifth Amendment imposes very specific obligations upon the government when it seeks to take private property, we are reluctant in the context of a factual situation that falls squarely within that clause to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause. It is appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause.

*Miller*, 945 F.2d at 352. In so holding, the Tenth Circuit relied on the reasoning of the Supreme

13

Court in *Graham v. Connor*, 490 U.S. 386 (1989), which "rejected substantive due process challenges where the allegedly illegal governmental action was clearly encompassed by some other, more specific, enumerated constitutional right." *Bateman*, 89 F.3d at 709. *See also Miller*, 945 F.2d at 352-53. The Tenth Circuit in *Bateman* noted that "[a] contrary holding would render the Supreme Court's decision in *Williamson* nugatory, as it would enable a resourceful litigant to circumvent the ripeness requirements simply by alleging a more generalized due process or equal protection violation." 89 F.3d at 709.

The Tenth Circuit has provided some guidance to determine whether a plaintiff's due process claim is coextensive with its takings claim. In *Rocky Mountain Materials & Asphalt, Inc. v. Board of County Commissioners of El Paso County*, the Tenth Circuit held that, where the loss of the property interest for due process purposes is the same loss upon which the plaintiff's takings claim is based, the plaintiff must first resort to condemnation procedures to recover compensation. 972 F.2d 309, 311 (1992). In this case, Plaintiffs' Fifth Amendment takings claim rests on their alleged right to a permit to build a probation and parole office on their property at the Yale Business Park. This is the same interest that supports their due process and equal protection claims. Moreover, Plaintiffs' Fourteenth Amendment claims stem from the same factual assertions that are practically inseparable from their takings claim and require an analysis tied to that which is required for their takings claim. Plaintiffs' Fourteenth Amendment claims are thus coextensive with their takings claim and subsumed within the more particularized protections of the Just Compensation Clause. *See Hallco Environmental Inc. v. Comanche County Bd. of County Comm'rs*, 149 F.3d 1190, *7 (10th Cir. June 10, 1998) (unpublished opinion) (holding that plaintiff's procedural due process, substantive due process, and equal protection claims,

14

among others, were subsumed within takings claim because claims all relied on same factual situation, and thus, Fourteenth Amendment claims, like takings claim, were not ripe for failure to meet both *Williamson County* prongs); *Bateman*, 89 F.3d at 709 (concluding that plaintiff's due process and equal protection claims were not ripe because they were subsumed within more particularized protections of Takings Clause); *Rocky Mountain*, 972 F.2d at 311 (because right to mine on its property was property interest supporting plaintiff's due process and takings claims, the claims were coextensive, and thus, plaintiff's procedural due process claim was as unripe as its takings claim for failure to meet *Williamson County* ripeness requirements); *J.B. Ranch*, 958 F.2d at 309-10 (both plaintiff's takings and procedural due process claims were unripe for failure to utilize state procedures to attempt to obtain compensation); *Miller*, 945 F.2d at 353 (determining that plaintiffs' substantive and procedural due process claims were subsumed within Just Compensation Clause); *Anderson*, 804 F.Supp.at 275-76 (dismissing plaintiff's Fourteenth Amendment due process and equal protection claims as unripe because property interest supporting claims – right to develop proposed subdivisions – was identical to interest allegedly taken without just compensation and plaintiffs had not sought just compensation through available state procedures); *First Bet Joint Venture v. City of Central City*, 818 F.Supp. 1409, 1412 (D. Colo. 1993) (due process and equal protection claims were subsumed by takings claim). Therefore, Plaintiffs' due process and equal protection claims are not ripe for judicial review and are prematurely presented to this Court.

C.   **Remand of claims**

The decision whether or not to exercise supplemental jurisdiction over state law claims is within the sound discretion of the district court.  *Roe v. Cheyenne Mountain Conference Resort,*

*Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997).  Because this Court lacks federal subject matter

jurisdiction over all the federal constitutional claims asserted,[4] Plaintiffs' state law claims should

be remanded to the state district court.  *See* 28 U.S.C. § 1447(c) ("If at any time before final

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

remanded."); 28 U.S.C. § 1441(c) (the court in its discretion "may remand all matters in which

State law predominates"); 28 U.S.C. § 1367(c)(3) (authorizing court to decline to exercise

supplemental jurisdiction over state law claims in which it "has dismissed all claims over which it

has original jurisdiction"); *Key Outdoor, Inc. v. City of Galesburg*, 327 F.3d 549 (7th Cir. 2003)

(in removal case, district court should have remanded state law claims, rather than dismissing

complaint outright, where district court held plaintiffs' federal takings claim was unripe for failure

to utilize state remedies).

III.    **Conclusion**

After a thorough review of the law relating to the ripeness of federal constitutional takings

claims, this Court concludes that Plaintiffs' § 1983 federal takings claim is not ripe because of

Plaintiffs' failure to seek and be denied just compensation through state procedures prior to filing

their federal takings claim.  As Plaintiffs' § 1983 due process and equal protection claims rest on

the same facts as their concomitant takings claim, those claims are equally unripe for review.  As

this Court lacks original subject matter jurisdiction over Plaintiffs' claims, Plaintiffs' suit should be

remanded to state court.  It is unfortunate that the Court was not made aware of this jurisdictional

issue until this late in the proceedings.  Nevertheless, this Court cannot ignore its obligation to

---

[4]As discussed supra in footnote 3, federal diversity jurisdiction has not been established in
this case, so this Court does not have original jurisdiction over Plaintiffs' state law claims.

16

ensure that it has subject matter jurisdiction over the claims before it.  In this case, it does not.

IT IS THEREFORE ORDERED that Plaintiffs' case is hereby REMANDED in its

entirety to state court for further proceedings.

s/Electronically signed by Hon. C. LeRoy Hansen
SENIOR UNITED STATES DISTRICT JUDGE